May it please the court, as the panel is aware, the ultimate issue in this appeal is whether Mr. Hux pleaded sufficient facts in his first amended complaint to state a claim against SMU for breach of the implied duty of good faith and fair dealing under Texas law. This morning, I plan to focus my time, subject to your questions, on the threshold question of why the duty applies under the factual circumstances alleged in Mr. Hux's first amended complaint. Is there a case that applies that gives this duty to a student against his teacher or administrator? No Your Honor. The closest case is that cited in the briefing decision by Judge Solis of the Northern District which involved coaches, an athletic director, and a student athlete. She was on financial aid? Yes, Your Honor. In that case, Judge Solis, she had made reports of serious allegations and Judge Solis had determined that based on those serious allegations and the nature of the interactions between a reasonable jury could conclude that a special relationship under Texas law arose such that the university owed her a duty of good faith and fair dealing. I mean, that's a doctrine that Texas has fairly carefully limited to insurance in some very narrow situations whereas a lot of other states, as you know, have gone well beyond that. I think it's a pretty big hurdle for you to ask, I mean, it's fine, it's a good position as an advocate, but to ask us to establish, to declare that that doctrine is alive in Texas for this situation is just a big step. Yes, Your Honor. Really, the way that the law in Texas could be stated is this, that unless there's been a categorical decision that the duty does not apply, it is a factual determination as to whether there's a confidential relationship. So that's the default rule in Texas is it's a factual determination as to whether there's a confidential or special relationship that would give rise to the duty. And so I would say that to hold that there is no duty in the student university context would actually expand Texas law because the Texas Supreme Court hasn't made that categorical holding. What we have from the Supreme Court is, yes, primarily rooted in insurance, in the insurance context, but it is as a general rule a factual issue. And as Justice Spears noted in his concurring opinion in the English v. Fisher case, insurance was just one of the examples he listed along with oil and gas and partnership and agency as other contexts in which the duty can apply. And if we look, Your Honor, at a couple of the areas of Texas law where categorically it's been held that no duty applies, we can see that those cases are quite different from this one and we can see the reasons for those decisions. For example, in the city of Midland v. O'Brien case, which decided that there's no duty in the employer-employee context, the court noted that in Texas it's an at-will employment state. And so it's kind of an awkward juxtaposition to say that you have at-will employment contracts without an express provision to the contrary, and yet at the same time the employer owes a duty of good faith and fair dealing. It makes sense why the duty of good faith and fair dealing wouldn't apply there. The court also noted that it's heavily regulated by statute, employment law is, and so there are administrative remedies that have to be exhausted. And if there was a duty of good faith and fair dealing in that context, then the employee could simply file a claim for breach of the implied duty of good faith and fair dealing and get around or circumvent its administrative requirements under the statutes. So that's a context that's very different from here with the university and its student. But even if there is the doctrine in this context, the special relationship would have to precede the events in question. So what did you claim in the complaint that showed a special relationship prior to longstanding to the January altercation with Ms. Howa? What was in the complaint that suggested a preceding special relationship? Well, again, because it's a factual question, what is a longstanding relationship? He enrolled in August of 2010, I believe, and a lot of these events that took place through confiding in the chaplain's office and different personnel officials or university personnel or university officials, along with his being escorted to the mental health services building. But in the complaint, what did you allege was a preexisting relationship before January of what, 2011? Yes, yes. What did you allege any preexisting relationship? Just as a student. Just as a student? Yes, Your Honor. Okay. So is it limited in your mind to students that invoke the disciplinary process? Well, I don't think the court has to reach that question because it is a factual determination. Here we have a unique circumstance where it's alleged that the student was encouraged to and the university attempted to help him receive mental health services. Not every student meets with the chaplain's office for counseling or confides in members of that office. And then according to the allegations in the complaint, there were sort of subtle solicitations from the officials he met with to trust in them and to share with them they wanted to help him. And that's not something that the run-of-the-mill student experiences with the university. So I don't know that the court has to say that every university-student relationship categorically has a duty of good faith and fair dealing, but it's not contrary to Texas law. In fact, it's consistent with Texas law to look at the nature of this particular relationship under the facts alleged and to say, you know, this is a decision for a jury to make. What was the fair dealing he didn't get? Because it sounds, reading the complaint, it looks like he spoke to six different administrators. So what in the handbook would he have been entitled to differently? Well, he was essentially accused of sexual harassment of Ms. Howeth, and he never really received, according to the complaint, an administered hearing on that, like an actual hearing that's promised on the handbook. Another sort of fair dealing he didn't receive was just sort of a courtesy to his reputation. You know, there were flyers that were posted allegedly, according to the complaint, that people should be on the lookout for him. You know, there's injury to his reputation and things alleged in the complaint, and that is a factual issue as to whether or not that was fair treatment, given the relationship that had been formed between the university and the student in this case. Another context, because I know this is an important issue, another context where the Supreme Court has said that there's not a duty of good faith in fair dealing, I think it's important that we distinguish these categorical categories from other, or the current situation is the commercial and the business relationship. Supreme Court in Kremchuk looked at a franchisor-franchisee relationship and said that no duty applied. But you know, in the commercial context, negotiations are generally at arm's length. There's usually not a disparity of bargaining power, and in that particular case, there was a Texas Motor Vehicles Act, or something like that, that was enforceable through the Deceptive Trade Practices Act, which has detailed notice requirements. Again, a cumbersome interaction between the duty of good faith in fair dealing and the statutory schemes in play in that case. Actually, in the franchisee situation, there's often unequal bargaining power. Mom and Pop want to open a franchise, and there's a national company that's letting out hundreds of thousands of franchises over time, and it can be quite unequal, it seems to me, and yet Texas hasn't really imposed that requirement on the contract. Yes, Your Honor, what I should have said is that generally in a commercial context, there's not those bargaining disparities, but even when there are, you do have the Texas Deceptive Trade Practices Act, which enforces a lot of different consumer-oriented rights that can be, you know, that can apply to the franchisee, the Mom and Pop franchisee. I mean, is this student's relationship with the administration really that different from any other student or many other students? This particular student? Yes, Your Honor. Yes, Your Honor, I believe it was different. I don't have statistics, and of course, looking at the complaint, we're just looking for plausibility, but in the complaint, you have a student who was encouraged, who was sort of thought to be crazy, was encouraged to receive mental health services, was escorted to a building to receive mental health services, was viewed as a security threat, was treated that way, was, again, met, had to meet with the chaplain, it's different than meeting with your advisor for your classes or meeting with your RA because you are missing home, you know, your first semester, that sort of thing. I mean, that's another level. I mean, did you know if there's cases where any kind of connection like that would give rise to fiduciary or? I'm sorry, Your Honor. Could you repeat the question? I mean, what other cases do you have where an analogous relationship would give rise to this special relationship you're asking for? Well, the insurance context, although it might seem odd that I would mention that, that's sort of the epitome, the epitomized example of this, that everything is heightened there, the factors that we're looking at are heightened, but really what we're looking at in those an imbalance of bargaining power? Do you have the ability to control the other side? SMU, in its brief, you know, its well-written brief, said that one of the things you could do as a student is just find a new school, you know, unlike an insured, you can't just, you know, find a new insurance company when it doesn't, you could just go to another school, but that's really oversimplifying things. I think a lot like an insured, a student is, they've got, they've got, you know, they've got time invested, they've got money invested, they've got books they've bought, they've got friendships, they're sort of a stuckness, so there's a level of control the university has over the student. Let me ask you this, if you were writing the opinion in this case, what students would you suggest we put in the opinion have this relationship, or at least can get to the jury on the question? Sure. Well, as far as writing the opinion, I think that you would initially just recognize that you are just looking for facts, and that some of those facts, which I guess is what you're asking, what are those facts, I would suggest those facts would be that a student obtains mental health services, a student meets with counseling, like a, not just a, it's an advisor or a sort of a layperson, but an actual chaplain or a counselor for those purposes, a student who has any other sort of uniquely emotional experiences while on campus, any student who is subject to greater control of the university, whether it's through closer, on probation or under, in other words, once the university undertakes to sort of exert even greater control over the student than what you'd normally have a student, you know, you have probation or you're arrested, or whatever the case, those sorts of things. You're looking for, I think, you're looking for control, you're looking for, you're always going to have the disparity of a large university versus just a student. Professor befriends the student maybe and takes him under his wing. Yes, yes, your honor. Anything where you're sort of the, is the trust and confidence being solicited, is it more than just the natural respect and admiration that a student has for his professor, but is the professor taking that a step further or is another staff person taking that a step further and asking the student to trust them, confide in them, and then taking that information that's received through that confidence and taking, you know, harsh administrative or penalizing actions based on that? What about coaches and college athletic teams? Would there be a special relationship there because of the constant daily interaction and atmosphere of trust between a coach and the players? I would say, your honor, that yes, you potentially could. Again, I don't know that the court has to reach that decision today categorically, just like Judge Solis did in the Colley case, could simply say there's a fact issue here. There are enough, there are generally going to be enough indicators in that context, the collegiate athlete and its coaching staff, where the jury should at least get to decide, okay, in this case, did a special relationship arise such that the university owed a special duty or an implied duty of good faith and fair dealing? If you have no further questions, your honor, let's have your argument. Thank you very much. Thank you. All right. Ms. Reed. May it please the court, my name is Kimberly Williams, I'm here on behalf of Southern Methodist University. There are three issues that I'd like to discuss with you this morning, all of which provide a basis for affirming the district court's order. First, I'd like to discuss, and as you pointed out, why a duty of good faith and fair dealing in the student university context does not exist under Texas law, and particularly given the Texas Supreme Court's and other Texas courts' refusal to find such a duty as a matter of law outside of the insurance context. Second, even if a duty of good faith and fair dealing could be recognized in the university student context, in this instance, Mr. Hux failed to plead facts that are sufficient under 12b-6 to establish that a duty existed in this case. And finally, I would like to distinguish and discuss Judge Solis' ruling in Coley and as relied upon by Mr. Hux. Turning to my first point, Mr. Hux asks this court to expand the duty of good faith and fair dealing into the university context. Such an expansion is improper, given the Texas Supreme Court's repeated holding and other Texas appellate courts' repeated holding as a matter of law that a duty does not exist. The rationale behind that rule, as expressed by the Texas Supreme Court, is that implying a duty in every case where a contract exists and in every contractual relationship would abolish our system of government and let each case be decided by what is fair and in good faith. Instead, the duty only exists in special relationships, which leads us to the question, what is a special relationship? Outside of the insurance context, it's clear when a special relationship does not exist. As a matter of law, the court found that the employer-employee relationship is not special, giving rise to the duty. The lender-borrower relationship is not sufficiently special, giving rise to the duty. The patient-doctor relationship, the relationship between a mortgagor and a mortgagee, a supplier and a distributor, a franchisor, a franchisee. Out of all that case law, what's the most instructive in terms of applied to a new context? Which case would you point to when plaintiff has said, this is a different case? I would actually point to the Midland-O'Brien case, the Texas Supreme Court, which ruled that as a matter of law, there is no special relationship between an employer and an employee. In that case, the reasoning was that the employee had remedies. If they felt that they were treated unfairly, if they felt like they were treated unfairly, if they received an unfair demotion or suspension or change in pay, they could quit. They could go and find another job. The Texas Supreme Court also recognized that the legislature had enacted statutes regulating that area. Likewise, we have statutes, federal statutes, regulating a university in this context. What about, just for the sake of argument, limiting the orbit of students that might get some duty of fair dealing to situations where they can't quit? In other words, tuition won't be reimbursed, but the university's conclusion is it is mandated withdrawal. They've paid tuition and the disciplinary context is going to be, you're out and we keep your money. I don't think you can draw the line there because then you still would be faced with every student who's aggrieved at some point saying, I wasn't treated fairly or the university didn't treat me in good faith. I think it would open the courthouse to claims by students who feel like they were treated unfairly, either in the disciplinary process, if we limit it to that, they could use it and go beyond that into the academic range. I don't think there's a line to be drawn there given, again, that this tort is so narrowly construed under Texas law. Going to my second point that discusses that in this case, Mr. Hux failed to plead facts sufficient to support a claim. Here Mr. Hux alleges that he met with SMU administrators. I think you're correct that there were six of them that he met with. He alleges that he met with the chaplain, that he informed the administrators about quote, unquote, past events, what happened with Ms. Howleth and his employment. He assumed or perceived that SMU personnel were in his corner and he was encouraged or I think he claims he was required by SMU personnel to go to the mental health center for counseling. That type of behavior is something that happens on a university campus, I would suggest, on a daily basis. Students and administrators meet to discuss problems. Administrators are charged with helping students and supporting students. That's one of the reasons they are on the campus. If we were to open the university up to a tort duty of good faith and fair dealing, university administrators might be inclined perhaps not to lend support, perhaps not to lend aid, perhaps not to suggest that somebody go get mental health counseling. Point two is saying even if there is such a duty, he didn't plead it and therefore what wasn't pled? He didn't plead the necessary special or confidential relationship. There's a case that's instructive. It's not directly on point. It's the Ho case from the Texas appellate court. In that case, the case discusses whether or not an informal fiduciary duty exists between a student and their professors and administrators. The university was not a party. Although it wasn't necessarily the duty of good faith and fair dealing, I think it's instructive, it was a case alleging a fraud by omission. Under Texas law, to be actionable, the fraudulent omission requires either a formal or informal fiduciary relationship. The court found that there was no formal fiduciary relationship and then, for our purposes, examined whether an informal fiduciary relationship existed and whether this, again, they used the word special or confidential relationship existed. The court there said that there was no informal relationship because the evidence established nothing more than an ordinary student-teacher relationship where the parties were engaged in the usual jobs of supervising, teaching, advising, and evaluating. I would say that that's similar to what we have in this case where we have Mr. Hux who went to the chaplain's office, received counseling there, that he met with SMU administrators about what had happened to him in the past. Again, I don't think there is anything there that creates a special or fiduciary relationship in that sense, again, particularly in light of the Texas Supreme Court's refusal to find the special relationship outside of the insurance context. To your point as well, there were no allegations that there were any sort of relationship prior to him arriving as a student. And just because Mr. Hux claims that he confided in them and provided confidences, Texas law is clear that his confidence and his provision of these confidences is not sufficient to prove to us a quote-unquote special one that would give rise to this duty. The third point I'd like to make is with respect to the Coley opinion that was issued by Judge Solis. It's our position with all due respect to Judge Solis that the opinion was wrong, and in that case that a duty of good faith and fair dealing did not exist between Ms. Coley and the university. I would note that that decision didn't find a duty as a matter of law. It did say there was enough there to go to the jury, and it did use the term the unique circumstances of that case, and I would say that that case is different from the situation that we have here. In Coley, as you recognize, the plaintiff was a student athlete who reported a list of sensitive concerns to the athletic director. In that case, she claimed that the athletic director went to the women's basketball coach and then used those concerns against her and essentially terminated her scholarship or didn't renew her scholarship, her financial aid, her basketball scholarship, because she made these allegations. In this case, we have an entirely different set of facts and allegations. He does allege in paragraphs 34 and 37 that the dean of student life and the assistant vice principal for student affairs, they met with Hux to see if they could quote help him. He alleges that the SMU administrators requested that he go to the mental health building for an evaluation. He admits that he did not receive that evaluation, so that's one instance in which he didn't follow their direction and their instructions. So again, it's not like he went to the mental health building, got the counseling that was required, or given the mandatory withdrawal. Again, looking at paragraph 26, after his termination as an RA, he appealed, and in connection with that appeal, he was informed that he should stay away from the service house, another instruction from the university. And in paragraphs 44 and 45, he admits he attended a meeting at the service house there. So then another example of, this isn't a situation, excuse me, another example of Hux not following the instructions of the SMU administrators. So it's not a situation where, perhaps as in Coley, she confided in people, thought they were going to help her, and then they used it against her. In this instance, we have him admitting that he failed to follow the instructions of the SMU administrators, and that is what ultimately led for his mandatory withdrawal, and mandatory administrative withdrawal from the university. I have some time left, and so I'd like to go back to my first point again, which is that- There's no requirement that you use all your time. That is true. I would like just to say, perhaps in closing then, that as we discussed and as this panel has recognized, the Texas Supreme Court has routinely rejected the notion of a duty of good faith and fair dealing. The Fifth Circuit in the Nation's Bank case, which is cited in our brief, is an example of one instance where this court recognized that it was a very narrow doctrine, and that, yes, every relationship is perhaps infused with trust and confidence, but that's not sufficient to give rise to the duty of good faith and fair dealing. Therefore, I believe this court should not expand Texas law beyond its presently existing boundaries and into the university-student relationship. Thank you very much, Ms. Whitten. Thank you. Okay, Mr. Carson. I just wanted to respond to two points. The first one is just to the notion that the court is being asked to expand Texas law. All that's being asked of this panel, this court, is to make its eerie guess, and this decision, Galindo v. Precision American Court, cited in SMU's brief. It says that, and I'm quoting the court here, it says, our research confirms the district court's conclusion that Texas courts have yet to address this distinction in detail. Unfortunately, the absence of a definitive answer from the Texas courts or legislature and of a procedure for certifying the question of the Supreme Court does not relieve us of the obligation to decide this issue. Where no state court has decided the issue, a federal court must make an educated guess as to how that state Supreme Court would rule. That's all we're asking the court to do here. The second point is just with respect to the Ho v. University of Texas at Arlington case. The case in the case it's holding really establishes the parameters here that are currently in place in Texas law and should give the court a little bit more ability to not be concerned that implying a duty of good faith and fair dealing under certain university-student relationships would run wild with this duty or impose these burdensome obligations on universities. Ho is an example of what's not being imposed on the university. It's not an informal fiduciary duty, a duty to disclose facts in order to avoid a fraud claim and that sort of thing. That's all I have, Your Honor. Okay. Thank you, ma'am. Thank you, counsel, for your argument.